US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 0 5 2018

DOUGLAS F. YOUNG, Clerk
By
   Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JESSIE CARTER          PLAINTIFF    ]
                                    ]
         V.                         ]    No. 18-1004
                                    ]
                                    ]
USDA, and its REPRESENTATIVES in their ]
*official capacity at the USDA*        ]
                                       ]
              DEFENDANTS

## COMPLAINT AGAINST USDA and its REPRESENTATIVES …

This complaint is filed by Jessie Carter, and in accord/pursuant to U.S.C. 702 (Title 5, Part 1, Chapter 7). Under this Statute, I request a review of information and statements, used by Defendants that were;
1. Not in accord with USDA policy,
2. Defendants directed/recommended actions adverse to Plaintiff, without asking or understanding situation,
3. Defendants made written statements that showed only part of the law, then writing in the remainder, with something that is in conflict with USDA policy,
4. Used documents that were not consistent with USDA policy,
5. Has not followed stated/sworn policy with Plaintiff,

USDA and its Representatives, have acted in excess of their authority at times, and have withheld information at other times. These acts, and non-action, by USDA, have the effect of discrimination in character, which is simply treating Plaintiff differently than others. USDA and it's Representatives, did these acts 'Knowingly".

These actions have caused, and were the basis, that lead to Plaintiff being placed on "Permanent Exclusion List of Providers". Being on this list means, Plaintiff can never again work in chosen field. Any, and all programs operated thru Arkansas Dept. of Human Services (ADHS), are off limits to Plaintiff, because of actions of Defendants. It has taken a long time, and also intervention from The Court, to finally get confirmation of what the law/policy really is on the subject of CFR 226.6 which has been documented thru The Court.

Under 5 USC 706, Plaintiff is confident that The Court ; " shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."

With the information received from Ms. Jennifer Weatherly at USDA, which shows from 1995 thru 2001, all individuals and institutions were to only remain on National Disqualified List (NDL) for 7 years, since they were terminated from participation, if there was no debt owed. Ms. Weatherly conferred with others in the USDA before rendering this information. I take this information to be fact, as it reads in the CODE OF FEDERAL REGULATIONS, 226.6 (7).

Enclosed please find packet of documents, showing, information from Ms. Weatherly (USDA), also various documentation from USDA Representatives, at different times, that shows the methods being used to retain an individual on the NDL, causing Plaintiff to be placed on Permanent Exclusion List. Had USDA's stated policy, by Ms. Weatherly been followed, there would be no complaint.

This complaint as filed, requests The Court to declare judgement in favor of Plaintiff, and relief in the form of;
1. Replacement of former certification, (programs were taken due to USDA's abuse of authority), and programs,
2. Written confirmation that Plaintiff did not violate CFR 226.6
3. Defendants shall cause Plaintiff to be removed from List of Permanently Excluded Providers.

For the acts and deeds, of the Defendants, that show improper use of regulations and recommendations, that are not in accord with USDA policy. Plaintiff asks The Court to find Defendants liable for Plaintiff's cause of action.

May The Court understand that Plaintiff is not by any means an Attorney, or Lawyer of any kind. Nor does Plaintiff have any help, or advice from such. For these reasons, Plaintiff respectfully request The Court allow for Plaintiff's, sometimes misspelled words, and if the meaning is not clear on any subject, allow Plaintiff to clairify/explain.

JESSIE CARTER
PLAINTIFF
P.O. Box 173
Sparkman, Ar. 71763

*Jessie Carter*
12-26-2017

List of Names, Responsible Parties;
Mr. Curtis Curry-SNP Director for State of Arkansas
Mr. Ronald Rhodes-Director USDA Regional SW Office-Dallas
Ms. Betty Veasley-SNP Director USDA SW Regional Office –Dallas
MS. Ellen Walberg-FNS SW Regional Office –Dallas
MR. Alfred V. Escota- Civil Rights Director- Dallas
Ms. Jennifer Weatherly –USDA FOIA Official-Virginia
+

Apr-08-2004  08:13am  From-USDA                          2147675522          T-342  P.002/003  F-079

# CACFP NATIONAL DISQUALIFIED LIST
## Selected Institution - Detail Report

Report Date:         4/8/2004

### State Agency Imposing Disqualification:   Arkansas

Institution Record Number:     890
Institution Name:              Sparkman Learning Center, Inc.
Institution Address:           P.O. Box 173

                               Sparkman          Arkansas
Termination Date:                    2/20/1997



Plaintiff Exhibit # 1

### State Agency Contact Information:

Department of Child Care and Early Childhood Education
Arkansas Department of Human Services
P.O. Box 1437

Little Rock                                     Arkansas       72203-1437
Phone: (501) 682-8869
Fax:   (501) 682-2334
                                                Email:

### Reason(s) for Disqualification:

**New Institution**

☐ Submission of false information on the institution's application included but not limited to a determination that the institution has concealed a conviction for any activity that occurred during the past 7 years that indicates a lack of business integrity

☐ Any other action affecting the institution's ability to administer the Program in accordance with Program requirements

**Participating or Renewing Institution**

☐ Submission of false information on the institution's application

☐ Permitting an individual on the National disqualified list to serve as a principal or provider

☒ Failure to operate in conformance with Performance Standards at 7 CFR 226.6(b)(18)

☐ Failure to comply with bid procedures / contract requirements of procurement regulations

☐ Failure to return advance/start-up/expansion payments

☐ Failure to maintain adequate records

☐ Failure to adjust meal orders to variations in the number of participants

☐ Claiming reimbursement for meals not served to participants

☐ Claiming reimbursement for a significant number of meals that do not meet program requirements

☐ Use of a FSMC which is in violation of health codes

☐ Failure of sponsoring organizations to disburse payments to facilities

☐ Claiming reimbursement at a Title XX child care center in month when less than 25% of enrolled or licensed capacity (whichever less) are title XX beneficiaries

☐ Claiming reimbursement at a Title XIX or XX adult day care center in a month when less than 25% of enrolled adult participants are title XIX or XX beneficiaries

☐ Failure by a sponsor of day care homes to properly classify homes as tier I or tier II.

☐ Failure of a sponsoring organization to properly train or monitor sponsored facilities

☐ Use of day care home funds to pay for the sponsoring organization's administrative expenses

☐ Failure to perform any of the other financial or administrative responsibilities required by 7 CFR 226

☐ Failure to properly implement and administer day care home termination and administrative review provisions

☐ Any of the institution's principals ... ineligible for any other public program ... that program's requirements

☐ Conviction of institution or any principals for activity that occurred during the past 7 years that indicates a lack of business integrity

☐ Any other action affecting the institution's ability to administer the Program in accordance with Program requirements

### Other or Additional Comments:

### Disqualified Responsible Principals and Individuals:
| Last Name | First Name | Title | Date of Birth | Individual's Record Number |
|---|---|---|---|---|
| Whitaker | Pat | | | |

853

JUL. 10. 2007   5:15PM   JOHN W WALKER P A                               NO. 447   P. 4

**Seriously Deficient Discussion**

Page 1 of 1

**Tonya Russell**

From: Wahlberg, Ellen [Ellen_Wahlberg@fns.usda.gov]
Sent: Tuesday, November 30, 2004 11:18 AM
To: Curtis Curry; Tonya Russell
Cc: Slack, Jo Ann; Lopeze, Louise; Rhodes, Ronald
Subject: Seriously Deficient Discussion

Curtis—This will confirm our conversation concerning the effect of an individual being disqualified from the CACFP.

CACFP regulations at §226.6(c)(7)(iv) prohibit an individual who has been placed on the National disqualified list from serving as a principal in any institution or facility or as a day care home provider. Further, §226.6(c)(7)(iv)(A) requires a State agency to deny the application of a new or renewing institution if any of the institution's principals is on the National disqualified list. The State agency must declare the institution seriously deficient and initiate action to terminate the institution's agreement and disqualify the institution if the institution permits an individual who is on the National disqualified list to serve in a principal capacity for the institution or one of its facilities.

In the situation with Sparkman Learning Center, it is clear that the former director, Pat Whitaker, is still involved in a CACFP capacity since the institution is using her email address and provided it to you as the one for you to use for CACFP purposes. Ms. Whitaker was disqualified from the CACFP and cannot participate in the CACFP in any capacity.

If you have any questions, please feel free to contact me.
Ellen H. Wahlberg
CACFP/SFSP Policy &
Training Coordinator
Southwest Regional Office
USDA Food and Nutrition Service
(214) 290-9898
(214) 767-5522 - fax
ellen.wahlberg@fns.usda.gov

214 290.9818

PLAINTIFF
Exhibit # 2



12/15/2004

**USDA**

United States Department of Agriculture
Food and Consumer Service

Southwest Region

RECEIVED
APR 04 1997
Division of Children and Family Services

Reply to
Attn of: SWSN-253

MAR 28 1997

Subject: Report of Seriously Deficient Institutions

To: Terry Hallberg, Acting Director
Child Nutrition Division

Attached is a letter from the Arkansas Department of Human Services requesting the organization listed below to be placed on the National Listing of Seriously Deficient Institutions.

Pat Whitaker
Sparkman Learning Center, Inc.
P. O. Box 173
Sparkman, Arkansas 71763

If you have any questions, please contact this office.

RONALD J. RHODES
Regional Director
Special Nutrition Programs

Attachment

Plaintiff
Exhibit #3



*Plaintiff Exhibit #4*

**Food and Nutrition Service, USDA** §226.6

such an application) if the facility is on the National disqualified list.

→ (v) *Removal of institutions, principals, and individuals from the list.* Once included on the National disqualified list, an institution and responsible principals and responsible individuals remain on the list until such time as FNS, in consultation with the appropriate State agency, determines that the serious deficiency(ies) that led to their placement on the list has(ve) been corrected, or until seven years have elapsed since they were disqualified from participation. However, if the institution, principal or individual has failed to repay debts owed under the Program, they will remain on the list until the debt has been repaid.

(vi) *Removal of day care homes from the list.* Once included on the National disqualified list, a day care home will remain on the list until such time as the State agency determines that the serious deficiency(ies) that led to its placement on the list has(ve) been corrected, or until seven years have elapsed since its agreement was terminated for cause. However, if the day care home has failed to repay debts owed under the Program, it will remain on the list until the debt has been repaid.

(8) *State agency list.* (i) *Maintenance of the State agency list.* The State agency must maintain a State agency list (in the form of an actual paper or electronic list or retrievable paper records). The list must be made available to FNS upon request, and must include the following information:

(A) Institutions determined to be seriously deficient by the State agency, including the names and mailing addresses of the institutions and the status of the institutions as they move through the possible subsequent stages of corrective action, proposed termination, suspension, agreement termination, and/or disqualification, as applicable;

(B) Responsible principals and individuals who have been disqualified from participation by the State agency, including their names, mailing addresses, and dates of birth; and

(C) Day care home providers whose agreements have been terminated for cause by a sponsoring organization in the State, including their names, mailing addresses, and dates of birth.

(ii) *Referral of disqualified day care homes to FNS.* Within 10 days of receiving a notice of termination and disqualification from a sponsoring organization, the State agency must provide the appropriate FNSRO the name, mailing address, and date of birth of each day care home provider whose agreement is terminated for cause on or after July 29, 2002.

(iii) *Prior lists of disqualified day care homes.* If on July 29, 2002 the State agency maintains a list of day care homes that have been disqualified from participation, the State agency may continue to prohibit participation by those day care homes. However, the State agency must remove a day care home from its prior list no later than the time at which the State agency determines that the serious deficiency(ies) that led to the day care home's placement on the list has(ve) been corrected or July 29, 2009 (unless the day care home has failed to repay debts owed under the Program). If the day care home has failed to repay its debt, the State agency may keep the day care home on its prior list until the debt has been repaid.

(d) *Licensing/approval for institutions or facilities providing child care.* This section prescribes State agency responsibilities to ensure that child care centers, at-risk afterschool care centers, outside-school-hours care centers, and day care homes meet the licensing/approval criteria set forth in this part. Emergency shelters are exempt from licensing/approval requirements contained in this section but must meet the requirements of paragraph (d)(2) to be eligible to participate in the Program. Independent centers shall submit such documentation to the State agency on their own behalf.

(1) *General.* Each State agency must establish procedures to annually review information submitted by institutions to ensure that all participating child care centers, at-risk afterschool care centers, outside-school hours care centers, and day care homes:

(i) Are licensed or approved by Federal, State, or local authorities, provided that institutions that are approved for Federal programs on the

207

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| JESSIE CARTER | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01050 |
| | ) | |
| USDA and JENNIFER WEATHERLY | ) | |
| *In her official capacity at the USDA* | ) | |
| Defendants | ) | |

### SUPPLEMENT TO THE DECLARATION OF JENNIFER WEATHERLY

I, Jennifer Weatherly, pursuant to the provision of 28 U.S.C. § 1746, hereby submit the following declaration:

1. I am the Food and Nutrition Service (FNS) Freedom of Information Act (FOIA) and Privacy Act Specialist, stationed in Alexandria, VA. I have held this position since November 9, 2009. Prior to my current position, I was a FOIA and Privacy Specialist with the Department of the Air Force, stationed on Andrews Air Force Base.

2. As the Freedom of Information Act and Privacy Act Specialist for FNS, my duties, among other things, include processing FOIA requests and appeals made or referred to the National FNS FOIA Office under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552(a), assisting the FNS offices with their FOIA requests, and responding to Congressional inquiries. My duties also include initiating searches relevant to such requests and determining whether records or information must be disclosed or withheld.

3. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties including my review of the agency files and my discussions with colleagues at FNS who are also familiar with the facts at


Plaintiff
Exhibit # 5

1

issue in this litigation. The statements made in my previous declaration dated May 12, 2017, are hereby incorporated into this supplement.

4. I have carefully reviewed the Court's Order of June 5, 2017, wherein the Court ordered:

> Defendants are directed to respond to Plaintiff's request for specific dates each entity disqualified from 1995 through 2001 again became eligible to participate in agency programs. However, if Defendants do not maintain such records, they are to advise Plaintiff of that fact and describe the process by which Defendants determine eligibility dates for entities disqualified from 1995 through 2001.

5. FNS does not maintain records that detail when a disqualified institution becomes eligible.

## Reinstatement of Eligibility Process

6. Under FNS policy, a disqualified institution is generally disqualified for seven years, unless that institution owes a debt. If a debt is owed the institution remains disqualified until the debt is paid. In specific situations, an institution can request and be granted early removal from the disqualified list, if the institution creates an acceptable corrective action plan and owe no debt. When an institution comes off of the National Disqualified List (NDL) of Providers, they would have to reapply to participate. They are not guaranteed approval. In order to have been placed on the NDL, there had to have been a serious deficiency (or a suspension) which led to termination and disqualification. The serious deficiency(ies) which caused the termination and disqualification must be fully and permanently corrected. An institution may not be approved to participate until full and permanent correction is achieved.

7. The institution needs to have completed the required corrective action for the serious deficiencies which led to their termination and disqualification. Paying a debt and waiting

seven years does not remove the requirement that the institution achieve full permanent corrective action. Because this process has variations, FNS does not keep records with specific dates stating when each institution is eligible to re-apply.

8.  FNS believes that it has provided Plaintiff with all of the responsive information in its possession and has fully discharged its obligations under FOIA.

I declare under penalty under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in Washington, DC, on this 22nd day of June, 2017.

**JENNIFER WEATHERLY**

Jennifer Weatherly
FOIA Specialist, FNS
U.S. Department of Agriculture

3

PLAINTIFF
Exhibit #6

20.

- Sparkman Learning Center Inc., first termination date was February 20, 1997. You inferred the placement of Pat Whitaker on the National Disqualified List (NDL) is discriminatory and in addition when the institution (SLC) came off the NDL, that Ms. Whitaker should have come off as well, and that the non action is also discriminatory. In specific, the placement of Pat Whitaker on the National Disqualified List in 1997 was in error and a bias. Subsequently removal of her name should have occurred in 2004 is another prejudice.

The Placement of Pat Whitaker on the serious deficient list was mandated by regulation and resulting action supported by prescriptive instructions based on existing regulations. Part 226.6 of the Child and Adult Care regulation requires the ADHHS, the State agency, to place responsible "principles" on the NDL. Institutions, principles and individuals remain on the list until such time FNS, in consultation with the State agency determines the serious deficiencies have been corrected. In this instance, it was determine that SLC would be taken off the list. It is noted that Pat Whitaker continued to be on the National Disqualified List. She is scheduled to be removed on July 29, 2009.

- ADHHS denial of CACFP participation for FY 2005 and reimbursement for October, November, and December 2005 claims. The inference was that it was based on racial discrimination.

It is acknowledged that there was some confusion regarding the status of the application and subsequent claims. However, our review of the alleged denied claims revealed the claims were paid timely with the exception of the October claim. It was paid, but it was a few days late. In addition SLC's agreement was extended until the outcome of the Administrative Hearing. There is no evidence to substantiate evidence of discriminatory wrong doing.

- You alleged the ADHHS discriminated when they misapplied the regulations when SLC's agreement was not extended pending their outcome of their appeal.

The completed application was received in December 2005 and it was denied. The State agency was contacted by the (USDA FNS) Regional Office and was advised that they had to temporarily extend SLC's agreement and continue to pay any valid unpaid claims for eligible meals served until the outcome of the administrative hearing. Misapplication of the regulations does not itself demonstrate evidence of prohibitive discrimination. From a Civil Rights perspective it is not relevant as it does not give credence that the discrimination action would be more probable then less if this piece of information did not exist.

- You alleged CACFP administrative sanction policies, over the years, were selective and misapplied resulting in prohibitive discrimination. This resulted in a prior termination and it has continued through the current denial of SLC's participation. By inference you alleged the more stringent administrative sanction policies were significantly more among minority (Black) sponsors.

3

Page 3 from AL Escota